UNITED STATES DISTRICT COURT

DISTRICT OF ALASKA

Cook Inlet Energy, LLC,                )
                                       )
       Plaintiff,              )
                                       )     3:13-cv-00062 JWS
       vs.                     )
                                       )
Cudd Pressure Control, Inc.            )     ORDER AND OPINION
and RPC, Inc.,                         )
                                       )
       Defendants.             )
                                       )     [Re: Motion at docket 33]
_____)
Cudd Pressure Control, Inc.,           )
                                       )
       Counter-Claimant,       )
                                       )
       vs.                     )
                                       )
Cook Inlet Energy, LLC,                )
                                       )
       Counter-Defendant.      )
_____)

## I. MOTION PRESENTED

At docket 33, plaintiff Cook Inlet Energy, LLC ("CIE") moves pursuant to Rule 37 to compel defendant Cudd Pressure Control, Inc. ("Cudd") to produce documents with a supporting memo at docket 34. A certificate of good faith is at docket 35. Cudd opposes at docket 39. CIE replies at docket 49. Neither party requests oral argument.

## II.  BACKGROUND

CIE operates an offshore oil platform in Alaska known as the Osprey Platform ("Osprey").  In 2011, CIE contracted with Cudd for the provision of certain equipment and services for the Osprey.  Cudd did provide equipment and perform services on the Osprey, but the parties differ sharply on the adequacy of Cudd's performance.  CIE alleges that the equipment Cudd brought to the Osprey was inadequate and that the personnel Cudd employed lacked the ability to satisfactorily perform the services required.  CIE alleges that these deficiencies caused it to experience damages consisting of extra costs and delay.  For its part, Cudd alleges that it performed as required by the contract and that CIE has wrongfully refused to pay for Cudd's work.

In its First Amended Complaint, CIE seeks a declaration that CIE owes no more to Cudd.  It also pleads claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligent misrepresentation.  Beyond the declaration, CIE seeks an award of damages exceeding $75,000.  Defendants' deny that CIE is entitled to any relief.  Cudd's counterclaim pleads claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment (quantum meruit).  Cudd asks the court to award it damages in excess of $1,888,766.

## III.  DISCUSSION

**A.  Documents at Issue**

CIE asks the court to require Cudd to produce two things:

1. The April 26, 2012 document authored by James Wurst and sent to
Bobby Bray analyzing "slow trip times" and/or "down time" while Cudd was
present and working on the CIE Osprey Platform.

      2. Unredacted copies of those portions of Cudd's monthly Problem
Account Reports and Doubtful Accounts Analysis that relate directly to
Cudd's work for, and billings to, CIE, that are directly at issue in this case.[1]

The parties disagree with respect to two aspects of the documents sought. First, they disagree as whether the materials fall within the scope of discovery defined by Rule 26(b)(1). Second, assuming the documents fall within the ambit of Rule 26(b)(1), they disagree as to whether the materials are protected by the work-product doctrine.

**B. Rule 26(b)(1)**

      The scope of discovery laid out in Rule 26(b)(1) extends to "any nonprivileged matter that is relevant to any party's claim or defense . . . ." Rule 26(b)(1) adds that for information to be relevant, it "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

      Turning first to the April 26, 2012 document authored by James Wurst ("Wurst Analysis") the court agrees with CIE that it concerns topics that lie at the heart of the parties' dispute, Cudd's work on the Osprey. Cudd's contention that the Wurst Analysis falls outside the scope of discovery is based on the proposition that it is "a back of the envelope review of the opposing party's own documents [which] contains no independent facts, and no significant analysis."[2] Cudd goes on to point out that whether trip times were too long and down time excessive will turn on "an analysis of the events that occurred . . . and expert evaluation of those events."[3] Yet, as amply

---

[1]Doc. 34 at p. 3 (parenthetical and bracketed material omitted).

[2]Doc. 39 at p. 2.

[3]*Id*. at p. 7.

3

demonstrated by CIE's recitation of the various different descriptions of Wurst's work ventured by Cudd at other times or in other documents,[4] there is good reason to believe the Wurst Analysis is much more than a simple review of no consequence. While Wurst may not be an expert, he is the person Cudd trusted to evaluate CIE documents that are clearly relevant to the dispute. Seeing which he chose to focus upon, how he analyzed them, what inadequacies or inaccuracies he found in the CIE documents, and what, if anything, else he related or connected to particular CIE documents (which could include Cudd documents, statements by CIE or Cudd personnel or other matters) is reasonably calculated to lead to the discovery of admissible evidence. The Wurst Analysis falls within the scope of discovery established by Rule 26(b)(1), unless it is privileged–an issue considered in Subsection C. below.

The second set of materials CIE seeks consists of unredacted copies of Cudd's Problem Accounts and Doubtful Accounts Analysis ("Reports").[5] Cudd asserts, and a review of the unredacted portions confirms, that these are internal documents meant to address credit and payment problems related to various billings or accounts receivable sent or held by Cudd and several related entities. Further, it appears that among the redacted materials are internal communications about the terms upon which some of the disputes relating to the billings and accounts receivable could be compromised. Given both parties' descriptions of what this lawsuit is actually about, the court finds that production of the Reports is not reasonably calculated to lead to the discovery of

---

[4]Doc. 49 at pp. 7-9.

[5]The redacted reports produced by Cudd are found at dockets 34-5 and 34-6.

4

admissible evidence. The Reports fall outside the scope of discovery established by Rule 26(b)(1). Cudd will not be ordered to produce them.

**C. Rule 26(b)(3)**

"Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation for trial by or for another party."[6] CIE argues that the Wurst Analysis was not prepared in anticipation of litigation. Cudd espouses a contrary view. Cudd bears the burden of establishing that the Wurst Analysis was prepared in anticipation of litigation.[7]

CIE says the Wurst Analysis was attached to an email dated April 26, 2013.[8] Cudd does not contend otherwise; it says the document was created within a year of the filing of CIE's complaint.[9] CIE's original complaint was filed on April 4, 2013.[10] CIE's complaint followed a letter from Cudd dated March 15, 2013, in which Cudd threatened to sue CIE if it did not pay within 30 days.[11]

The Ninth Circuit adopted the "because of" test for deciding whether a document falls within the scope of Rule 26(b)(3) in *In Re Grand Jury Subpoena*,[12] a case cited and

---

[6] Fed. R. Civ. P. 26(b)(3)(A).

[7] *Hernandez v. Tanninen*, 604 F.3d 1095, 1102 (9th Cir. 2010) (recognizing burden is on party invoking work product doctrine); *Pacific Fisheries, Inc. v. United States*, 539 F.3d 1143, 1146 (9th Cir. 2008) (same).

[8] Doc. 34-2 at 4.

[9] Doc. 39 at 13.

[10] Doc. 1.

[11] Doc. 1-1.

[12] 357 F.3d 900, 907 (9th Cir. 2004),

5

relied upon by both parties. There, Ponderosa Paint Manufacturing, Inc. ("Ponderosa") learned that it was under government investigation concerning its transportation and disposal of hazardous materials. Ponderosa hired a lawyer to advise it and to defend it in the criminal and civil litigation which it anticipated would result from the investigation. The lawyer in turn hired an assistant named Torf to help the lawyer prepare to defend Ponderosa. Torf was engaged to interview witnesses, sample and test products, and examine properties that might have been exposed to hazardous waste.

Torf received subpoenas from a grand jury covering all of the documents prepared in the course of his work for Ponderosa's lawyer. The Ninth Circuit found that all of the documents at issue were prepared in anticipation of litigation, but some of them–the "dual purpose" documents–were also prepared to comply with certain obligations imposed on Ponderosa pursuant to statute and a consent decree. The Ninth Circuit held that the "dual purpose" documents were "entitled to work product protection because, taking into account the facts surrounding their creation, their litigation purpose so permeates any non-litigation purpose that the two purposes cannot be discretely separated from the factual nexus as a whole."[13]

The Wurst Analysis was not created by a lawyer preparing to defend Cudd, or someone engaged to assist a lawyer preparing to defend Cudd. It was created by a Cudd employee named Wurst at the request of another Cudd employee named Bray who "wanted a second set of eyes [to] look at the records and assist him in

---

[13] *Id.*, 357 F.3d at 909.

understanding CIE's claim."[14]  Bray had been engaged in attempting to negotiate a resolution with CIE and was motivated to seek Wurst's help because he was "getting heat on my end to get this resolved."[15]

While it is evident now that CIE and Cudd were on a collision course that would end in litigation, the record does not disclose any mention of litigation until after the Wurst Analysis had been completed.  Cudd's attempt to establish that the Wurst Analysis was a "dual purpose" document entitled to work product protection under the teaching of *In re Grand Jury Subpoena* fails because at the time of its creation, the Wurst Analysis was a single-purpose document whose purpose was to aid Bray in his negotiations with CIE.  Cudd cannot retroactively alter the purpose of the document.

**D.  Rule 37 Expenses**

CIE asks for an award of its expenses associated with bringing the motion to compel.[16]  When a motion to compel is granted, Rule 37 requires the court to award the movant reasonable expenses.[17]  However, when as here, a motion to compel is granted in part and denied in part, the court is not obligated to make an award.  Rather, the court *may* apportion the expenses.[18]  With due consideration for the outcome of the motion, the court exercises its discretion not to award either party any portion of the expenses it incurred.

---

[14] Doc. 39 at 6.

[15] *Id*. at 5.

[16] Doc. 33-1.

[17] Fed. R. Civ. P. 37(a)(5)(A).

[18] Fed. R. Civ. P. 37(a)(5)(C).

7

## V. CONCLUSION

For the reasons set out above, the motion at docket 33 is GRANTED in part and DENIED in part as follows: Defendant Cudd shall provide a copy of the Wurst Analysis to counsel for plaintiff CIE within 14 days from the date of this order.

DATED this 27th day of June 2014.

/S/ JOHN W. SEDWICK
SENIOR UNITED STATES DISTRICT JUDGE